IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| | ) No. 04-2730 Ma/P |
| CLEVELAND CONSTRUCTION, INC., | ) ) |
| Defendant. | ) ) |

_____

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
_____

Plaintiff Equal Employment Opportunity Commission ("EEOC") brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), and 42 U.S.C. § 1981, alleging that Defendant Cleveland Construction, Inc. ("CCI") engaged in unlawful employment practices. The EEOC specifically alleges that CCI terminated three Charging Parties and three Class Members based on their race. Oliver Johnson ("Johnson"), Robert Evans ("Evans"), and Eric Calhoun ("Calhoun") are the Charging Parties, and Eric Jackson ("Jackson"), Terry Radcliff ("Radcliff"), and Calvin Wright ("Wright") are the Class Members. The EEOC also alleges that CCI did not comply with the record-keeping requirements of Title VII.

Before the court is CCI's motion for summary judgment, filed

on March 24, 2006. The EEOC responded on May 2, 2006. CCI filed a reply on June 1, 2006. For the following reasons, CCI's motion is DENIED.

## I. Background

CCI is a contractor hired to assist in constructing the FedEx Forum ("the Forum") in Memphis, Tennessee. (Def.'s Mem. SUMF 2.) The Charging Parties and Class Members began working on the Forum in October or November 2003. (Id. SUMF 10, 29, 43, 57, 66, 80.) Wright was hired as a laborer, and the other five were employed as carpenters. (Id.) All six are African-American. (Pl.'s Mem. 1.) On October 20, 2003, Salvatore Palma ("Palma"), one of CCI's superintendents, terminated Johnson, Evans, and Calhoun. (Def.'s Mem. SUMF 23, 34, 46.) Jackson, Radcliff, and Wright, who were hired in November 2003, were terminated in November or December 2003. (Id. SUMF 78, 83; Pl.'s Mem. 8.)

## II. Jurisdiction

The court has jurisdiction to adjudicate federal claims under 28 U.S.C. § 1331.

## III. Standard for Summary Judgment

The party moving for summary judgment "bears the burden of clearly and convincingly establishing the nonexistence of any genuine issue of material fact, and the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." Kochins v. Linden-Alimak,

Inc., 799 F.2d 1128, 1133 (6th Cir. 1986). The moving party can meet this burden by pointing out to the court that the respondents, having had sufficient opportunity for discovery, have no evidence to support an essential element of their case. See Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989).

When confronted with a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. A genuine issue for trial exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party opposing the motion must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party may not oppose a properly supported summary judgment motion by mere reliance on the pleadings. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Instead, the nonmoving party must present "concrete evidence supporting its claims." Cloverdale Equip. Co. v. Simon Aerials, Inc., 869 F.2d 934, 937 (6th Cir. 1989). The district court does not have the duty to search the record for such evidence. See InterRoyal Corp. v. Sponseller, 889 F.2d 108, 110-11 (6th Cir. 1989). Nonmovants have the duty to point out specific evidence in the record that

would be sufficient to justify a jury decision in their favor. See id.

**IV. Analysis**

   **A. Discriminatory Termination**

The plaintiff has the initial burden of establishing a prima facie case of racial discrimination under Title VII. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). If a plaintiff cannot establish discrimination through direct evidence, a plaintiff can establish an inference of discrimination by showing that: (1) he is a member of a protected class, (2) he was subject to an adverse employment action, (3) he was qualified for his position, and (4) he was replaced by a person outside the protected class or he was treated less favorably than similarly-situated employees outside the protected class. Johnson v. Univ. of Cincinnati, 215 F.3d 561, 572-73 (6th Cir. 2000). When a plaintiff has established a prima facie case of racial discrimination, the burden shifts to the employer to put forth a legitimate, nondiscriminatory reason for its action. McDonnell Douglas, 411 U.S. at 802. Once an employer has offered such a reason, the plaintiff must show that this reason is merely a pretext. Id. at 805.

It is undisputed that the EEOC has established the first two elements of its prima facie case as to all Charging Parties and Class Members. CCI asserts, however, that the EEOC cannot

4

establish the third or fourth elements as to any of the Charging Parties or Class Members.

### 1. Qualifications

CCI argues that none of the Charging Parties or Class Members is qualified for his position. CCI's argument is based on the testimony of Palma and CCI's other superintendent, Keith Montgomery ("Montgomery"), that the terminated employees were not performing their job duties to CCI's satisfaction or, in the case of Evans, that there was no work available he was qualified to perform. These, however, are CCI's nondiscriminatory reasons for terminating the Charging Parties and Class Members, which the court may not consider when examining the EEOC's prima facie case. Wexler v. White's Fine Furniture, Inc., 317 F.3d 564, 574 (6th Cir. 2003) "At the prima facie stage, a court should focus on a plaintiff's *objective* qualifications to determine whether he or she is qualified for the relevant job." Id. at 575 (emphasis in original). Therefore, rather than focusing on the employer's subjective opinions about the work performed, "the inquiry should focus on criteria such as the plaintiff's education, experience in the relevant industry, and demonstrated possession of the required general skills." Id. at 576.

Wright was hired as an unskilled laborer, and therefore, the only objective qualification for the position was that he be physically able to do the work required. CCI does not contend that any of the Charging Parties or Class Members was not

physically able to perform the tasks assigned by CCI. Evans was hired to hang sheetrock. Johnson, Calhoun, Jackson, and Radcliff were all hired to perform metal-stud framing. It is undisputed that the five men hired as carpenters had extensive experience in construction or carpentry.

CCI contends that Johnson was not qualified to perform metal-stud framing because, in more than twenty years of carpentry experience, he had only approximately one and a half years of experience working with metal studs. (Def.'s Mem. SUMF 13, 15.) The testimony of CCI's superintendents, however, indicates that one and a half years of experience is sufficient to objectively qualify Johnson for his position at CCI. Palma testified that he learned metal-stud framing in about six months (Palma Dep. 23:9-19, July 13, 2005), and Montgomery indicated that his experience in wood framing helped him on his first job doing metal framing. (Montgomery Dep. 23:4-16, Jan. 24, 2006.) The EEOC has produced sufficient evidence to show that there is a genuine issue of material fact about whether the Charging Parties and Class Members were objectively qualified for their jobs.

### 2. Replacement Outside the Protected Class

The evidence, taken in the light most favorable to the EEOC, indicates that the Charging Parties and Class Members were replaced by Hispanic workers. The issue of replacement is not as clear-cut in this case as in others because the duties and responsibilities of individual carpenters and laborers were not

6

fixed or distinguishable from those of other carpenters and laborers. The evidence indicates, however, that, during the period when the Charging Parties and Class Members were terminated, CCI was hiring a large number of Hispanic carpenters and laborers. For example, on the day the Charging Parties were terminated, six Hispanic carpenters began working on the Forum. (Def.'s Mem. SUMF 21.) The evidence presented by the EEOC creates a genuine issue of material fact about the fourth element of its prima facie case. Therefore, the court finds that the EEOC has established a prima facie case of termination based on race sufficient to withstand summary judgment as to all Charging Parties and Class Members.

### 3. Same-Actor Inference

Johnson, Evans, Jackson, and Radcliff were all hired by Palma or by Palma and Montgomery together, and each was fired by Palma. Therefore, CCI argues that it is entitled to an inference of a lack of discriminatory animus and to summary judgment as to these four individuals because the same person hired and fired each of them. CCI also asserts that it is entitled to the same-actor inference as to Calhoun because, although he was hired by Montgomery and fired by Palma, Palma had accommodated Calhoun's fear of heights by transferring him to work on the interior of the Forum rather than the exterior, where he was originally assigned.

Although the Sixth Circuit recognizes the same-actor inference, "it is by no means a mandatory [inference], and it may be weakened by other evidence....[I]t is insufficient to warrant summary judgment for the defendant if the employee has otherwise raised a genuine issue of material fact." Wexler, 317 F.3d at 573-74. Here, the inference is not sufficient to warrant summary judgment.

### 4. CCI's Reasons for Termination and Pretext

According to CCI, Johnson was terminated for poor performance. Evans was allegedly terminated because there was no need to hang sheetrock and he lacked sufficient knowledge and experience to work on metal-stud framing. Calhoun and Jackson were also allegedly terminated because they lacked sufficient knowledge and skills to perform their jobs. Radcliff was allegedly terminated for working too slowly and for poor performance, and Wright was allegedly terminated for working too slowly. Because CCI has presented legitimate, nondiscriminatory reasons for terminating each of the Charging Parties and Class Members, the burden shifts back to the EEOC to show that these reasons are pretextual.

There is evidence indicating that Johnson, Evans, Calhoun, and Jackson may have been laid off, rather than fired for cause. Given that CCI was hiring new employees throughout the period in question and that there is evidence showing that there was both

8

metal-stud framing and sheetrock hanging work available at the Forum after these men were terminated, it is not clear why CCI needed to lay off workers or was unable to call them back to work within a short period of time. Although CCI asserts that these employees were not actually laid off and that documents indicating that they were laid off were mistaken or were created as acts of kindness to allow the men to receive unemployment benefits, material facts about these matters remain in dispute.

The evidence also indicates that, despite an established discipline policy at CCI (Pl.'s Mot. Ex. 29), none of the Charging Parties or Class Members was ever given written notice that his work was inadequate before he was terminated. The failure to provide notice of inadequate performance is particularly relevant in the cases of those individuals who were allegedly terminated for working too slowly, rather than for lacking the necessary knowledge and skills to perform the work required, because it is more likely that they could have improved their performance given adequate warning. There is evidence that at least one other employee did receive a written warning under CCI's discipline policy. (Pl.'s Mot. Ex. 30.) The disciplinary action form covers a number of types of violations, including work quantity and quality violations. (Id.) The evidence presented by the EEOC is sufficient for a reasonable jury to find that CCI's reasons for terminating the Charging Parties and Class

9

Members were pretextual.

### B. Failure to Maintain Adequate Records

Section 709(c) of Title VII requires employers (1) to maintain records relevant to the determination of whether unlawful employment practices have been or are being committed, (2) to preserve those records for a period of time, and (3) to make reports from the records as the EEOC prescribes. 42 U.S.C. § 2000e-8(c). As part of its hiring process, CCI used pads of paper to record the names and experience of applicants and the dates they applied. (Def.'s Mem. SUMF 91.) No one completed a formal application until he had been hired. (Palma Dep. 103:3-5.)

CCI asserts that it cannot produce any of the pads because the pages were torn out and thrown away immediately and that this practice did not violate Title VII because the pads were not the type of records contemplated by the statute. Given, however, that the evidence indicates the pads were the only record of those applicants who were not hired to work on the Forum, there is a genuine issue of material fact about the EEOC's claim that CCI violated Title VII's record-keeping requirements. CCI's motion for summary judgment on that claim is denied.

10

**V. Conclusion**

    Defendant Cleveland Construction, Inc.'s motion for summary judgment is DENIED.

    So ordered this 29th day of June 2006.

    s/Samuel H. Mays, Jr.
    SAMUEL H. MAYS, JR.
    UNITED STATES DISTRICT JUDGE